O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

FRANK CUELLAR, individually and
   on behalf of other persons similarly
   situated,

         Plaintiff,

   v.

FIRST TRANSIT INC., an active Ohio
   Corporation;
FIRST VEHICLE SERVICES, INC.,
   an active Ohio Corporation; and
DOES 1 through 10,

         Defendants.

Case No. 8:20-cv-01075-JWH-JDE

**ORDER GRANTING MOTION
FOR ATTORNEYS' FEES, COSTS,
SERVICE AWARD, AND
ADMINISTRATION COSTS [ECF
No. 46] AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT [ECF No. 47]**

Before the Court are two unopposed motions of Plaintiff Frank Cuellar, individually and on behalf of all others similarly situated, in this class action case.  In his first motion, Cuellar seeks attorneys' fees, litigation costs, a service award as the class representative, and administration costs to the court-appointed settlement administrator, Phoenix Administrators.[1]  In his second motion, Cuellar asks for final approval of the class action settlement.[2]  The Court conducted a hearing on the Motions in October 2023.  After considering the papers filed regarding the Motions and the arguments that counsel made during the hearing,[3] the Court orders that the Motions are **GRANTED**, as set forth herein.

## I.  BACKGROUND

This is a wage-and-hour class action.  In his Second Amended Complaint, Cuellar alleges that Defendants First Transit, Inc. and First Vehicle Services, Inc. violated wage-and-hour laws in the following ways:

- failing to provide meal periods, rest periods, and accurate wage statements;
- failing to pay wages generally and failing to pay wages in a timely manner at termination or separation;
- failing to reimburse business expenses;
- failing to maintain payroll records;
- violating the Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and
- incurring penalties pursuant to the Private Attorneys General Act ("PAGA").[4]

### A.    Factual Allegations

Defendants, who are in the transportation services business, employed Cuellar as a bus driver.  Cuellar worked in that capacity from November 2018 to January 25, 2019.[5] Cuellar alleges that Defendants did not pay all of the wages that Cuellar had earned,

---

[1]    Pl.'s Mot. for Att'ys' Fees, Costs, Service Award, and Administration Costs (the "Motion for Attorneys' Fees") [ECF No. 46].

[2]    Pl.'s Mot. for Final Approval of Class Action Settlement (the "Motion for Final Approval") [ECF No. 47].

[3]    The Court considered the documents of record in this action, including the following papers:  (1) Motion for Attorneys' Fees (including all attached declarations); and (2) Motion for Final Approval (including the attached declaration).

[4]    Motion for Final Approval 1:20-2:5.

[5]    Second Am. Compl. (the "Amended Complaint") [ECF No. 45] 2:26-3:2.

including accrued vacation wages, at the time of his termination.[6]  Cuellar alleges that, during his employment, Defendants deprived him of lawful meal and rest periods; they did not pay him all of the wages, including overtime, to which he was entitled; and they failed to provide him with accurate and legally compliant itemized wage statements.[7] Cuellar alleges that those failures were the result of Defendants' consistent policies, which violate wage-and-hour laws.[8]  Cuellar, on behalf of himself and all class members, seeks an award of unpaid wages, penalties, equitable relief, and attorneys' fees and costs, pursuant to wage-and-hour laws.[9]  He also seeks injunctive relief, restitution, and disgorgement of Defendants' illegally obtained benefits.[10]  Finally, Cuellar seeks an award of unpaid wages and other compensation, penalties, and reasonable attorneys' fees and costs under PAGA.[11]

## B.   Procedural History

Cuellar filed his original Class Action Complaint in Orange County Superior Court in January 2020.[12]  Defendant First Transit filed its answer in state court and subsequently removed this action to this court in June 2020.[13]  Cuellar, on behalf of himself and all similarly situated parties, filed his First Amended Complaint, per the parties' stipulation, adding a claim for relief under PAGA,[14] and Defendants answered.[15]

The parties engaged in substantial discovery, "including the production of thousands of lines of electronic documents and data including all relevant policies and procedures and detailed class metrics as they relate to the asserted claims."[16]  The parties then participated in private mediation with Scott S. Markus at Signature Resolutions.[17] Mediation was fruitful:  the parties stipulated to continue the class certification process

---

[6]     *Id.* at 3:3-5.

[7]     *Id.* at 3:6-8.

[8]     *See id.* at 3:9-4:6.

[9]     *Id.* at 4:7-10 (seeking relief under Cal. Lab. Code §§ 201, 202, 203, 204, 210, 226, 226.7, 227.3 510, 512, 1194, 1194.2, 2800, and 2802).

[10]     *Id.* at 4:11-14 (seeking relief under Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

[11]     *Id.* at 4:15-19.

[12]     *See* Notice of Removal to Federal Court Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 [ECF No. 1] 2:25-27.

[13]     *Id.*

[14]     *See* Stipulation to File First Am. Compl. [ECF No. 12]; First Am. Compl. [ECF No. 13].

[15]     *See* Answer to Am. Compl. [ECF No. 14].

[16]     Motion for Final Approval 13:28-14:2.

[17]     *See* Order/Referral to ADR [ECF No. 15]; Motion for Final Approval 2:13-15.

three times before filing a notice of their settlement in August 2022.[18]  Cuellar filed an unopposed Motion for Preliminary Settlement Approval in September 2022, and this Court ordered its preliminary approval in June 2023.[19]  In the interim, Defendants served a copy of the settlement agreement on the Attorneys General of the United States and of each state where class members reside, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715.[20]  Pursuant to the settlement agreement, the parties stipulated to file the Second Amended Complaint, which "harmoniz[es] the scope of the class and claims as between the [s]ettlement [a]greement and the [Second Amended] Complaint."[21]  The Court granted Cuellar leave to file a Second Amended Complaint,[22] which he did in July 2023.[23]  Cuellar filed his Motion for Attorneys' Fees and Motion for Final Approval, the instant motions, in September 2023.[24]

## II. FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.    Overview

As summarized in the Motion for Final Approval,[25] the settlement agreement establishes a non-reversionary settlement amount of $4,363,000 for the benefit of the settlement class.[26]  This figure equates to a recovery of between $3.59 (minimum) and $1,208.18 (maximum) per class member, as recovery by each class member depends upon the duration of his or her employment during the class period plus an enhancement to former employees; the average recovery will be $244.26 per class member.[27]  The settlement amount includes $250,000 to be allocated for the PAGA claim; $187,500 to be

---

[18]    *See* Notice of Settlement [ECF No. 31].

[19]    *See* Motion for Settlement Approval of Class Action, *Prelim.* [ECF No. 33]; Order Granting Prelim. Approval of Class Action Settlement (the "Order Granting Preliminary Approval") [ECF No. 42].

[20]    *See* Notice of Lodgment of CAFA Settlement Notice Materials in Supp. of Mot. for Prelim. Approval of Settlement [ECF No. 34].

[21]    Stipulation to File Amended Complaint [ECF No. 43] 2:10-11.

[22]    *See generally* Order Granting Pl. Leave to File Amended Complaint [ECF No. 44].

[23]    *See generally* Amended Complaint.

[24]    *See generally* Motion for Attorneys' Fees; Motion for Final Approval.

[25]    *See generally* Motion for Final Approval.

[26]    *Id.* at 1:3-14.

[27]    *Id.* at 5:25-6:3.

allocated to the Labor and Workforce Development Agency; and $62,500 to be payable to PAGA members.[28]

Individualized class notices were circulated to class members in both English and Spanish, which informed them:

- of the nature of the action;
- of the definition of the settlement class certified;
- of the class claims, issues, or defenses, and the class period;
- that a class member may enter an appearance through counsel if the member so desires;
- that the Court will exclude from the settlement any class member who requests exclusion;
- of the time and manner for requesting exclusion;
- of the binding effect of a class judgment on class members under Rule 23(c)(3) of the Federal Rules of Civil Procedure; and
- that they have a right to object, and how to do so.[29]

Each class notice included an individualized estimated recovery, assuming 100% participation, and the number of workweeks attributable to that class member.[30]  As of the time of the hearing on the instant Motions, the administrator had received no objections to the settlement, no workweek disputes, and eight requests for exclusion (representing only 0.07% of the total class).[31]

## B.      Legal Standard

The Federal Rules of Civil Procedure require court approval for class-action settlements.  Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, district courts use a two-step process to approve a class-action settlement.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  First, the Court must certify the proposed settlement class.  *See id.*  Second, the Court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see also Staton*, 327 F.3d at 952. The Federal Rules instruct the Court to consider the following factors:

---

[28]      *Id.* at 15:13-16.

[29]      *Id.* at 3:6-13.

[30]      *Id.* at 3:14-20.

[31]      Second Suppl. Decl. of Kevin Lee with Respect to Notice and Settlement Administration (the "Second Supplemental Lee Declaration") [ECF No. 48] 2:7-16.

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, with respect to Rule 23(e)(2)(C)(iii), the Ninth Circuit directs district courts to undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," regardless of "whether a settlement agreement has been negotiated before a class has been certified or after." *Westfall v. Ball Metal Beverage Container Corp.*, 2021 WL 4206851, at *4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class." *Briseño*, 998 F.3d at 1026. The Ninth Circuit instructs this Court to analyze three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-27.

In the Ninth Circuit, courts also consider the eight "*Churchill* factors":

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), which was citing *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

Finally, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *Id.* The Court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

## C.   Analysis

### 1.   Settlement Class Certification and Heightened Rule 23(e) Inquiry

This Court preliminarily certified the proposed settlement class in its prior order,[32] although formal class certification has not yet occurred. Because settlement occurred before formal class certification, this Court applies "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)" to its final approval. *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022). Because the Court finds that a "probing inquiry" of the Rule 23(e) criteria and the Ninth Circuit factors, as discussed below, favors approval, the Court certifies the settlement class for final approval of the settlement. *See id.*

### 2.   Rule 23(e)(2) Factors

#### a.   Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class. This analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation,

---

[32]   *See* Order Granting Preliminary Approval 2.

or "the actual outcomes of other cases." Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

In this case, several aspects of the litigation suggest that this factor weighs in favor of approval. First, Class Counsel—Zorik Mooradian and Haik Hacopian of Mooradian Law, a Professional Corporation[33]—have extensive experience with class action litigation, and they have actively litigated this case for years.[34] Second, the parties reached settlement only after vigorous litigation, including "investigation of the operative facts and applicable law" and "the production of thousands of lines of electronic documents and data including all relevant policies and procedures and detailed class metrics as they relate to the asserted claims."[35] The parties also conducted expert analysis.[36] The Court therefore finds that Cuellar and Class Counsel have adequately represented the proposed settlement class, which weighs in favor of final approval of the settlement agreement.

### b.    Arm's Length Negotiations

The Court must next consider whether the settlement agreement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this factor can be "described as [a] 'procedural' concern . . . looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Although the Court was not involved in the negotiations directly, mediator Scott S. Markus is "a well-respected mediator with significant wage and hour experience."[37] The parties reached settlement after a full-day mediation before Markus.[38] The presence and assistance of an experienced mediator in the settlement process strongly suggests "that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see also Goodwin v. Winn Mgmt. Grp. LLC*, 2017 WL 3173006, at *8 (E.D. Cal. July 26, 2017) (concluding that that the settlement was the product of informed, arm's length negotiations by the parties where settlement resulted from, among other things, a full day of mediation); *Pederson v. Airport Terminal Services*, 2018 WL

---

[33]    *Id.*

[34]    *See* Decl. of Zorik Mooradian (the "Mooradian Declaration")[ECF No. 46-2]; Decl. of Haik Hacopian (the "Hacopian Declaration") [ECF No. 46-3]; Motion for Final Approval 14:18-22.

[35]    Motion for Final Approval 13:27-14:3.

[36]    *Id.* at 14:7-8.

[37]    *Id.* at 9:27-28; *see also Scott Slater Markus*, Signature Resolution, https://signatureresolution.com/neutral-CPT/scott-markus/.

[38]    *Id.* at 14:6-7.

2138457, at *7 (C.D. Cal. April 5, 2018) (approving a preliminary settlement when the oversight "of an experienced mediator" reflected non-collusive negotiations).  In sum, because it appears that the parties negotiated at arm's length, this factor weighs in favor of final approval.

### c.    Adequacy of Relief Provided for the Class

The third factor is whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

### i.    Costs, Risks, and Delay of Further Litigation

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a settlement is not the maximum amount that the plaintiffs might have recovered, but, rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

As Cuellar notes, this case "had evolving issues as to whether and to what extent class members were entitled to additional wages and breaks."[39]  Continuing to litigate these issues—through class certification, trial, and an inevitable appeal by either party— would likely take "several years" and would result in enormous expense without any certainty that the class members would receive a remedy.[40]  Additionally, subsequent review by district courts could have jeopardized any chance of recovery for the class, as the law continues to evolve.  This Court therefore finds that the settlement amount of $4,363,000 is adequate given the costs, risks, and delay of continued litigation.

---

[39]    *Id.* at 12:13-14.

[40]    *Id.* at 12:14-19.

### ii.        Effectiveness of the Method of Distributing Relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id.*

The Court finds that the method for distributing relief is adequate, as the funds are distributed directly to the class members (except those whose notice packets were returned as undeliverable without a forwarding address) as individual settlement checks, which are valid for 180 days and contain language to effectuate opt-in for purposes of the Fair Labor Standards Act.[41]  Thus, the Court finds that this factor weighs in favor of final approval.

### iii.       Proposed Award of Attorneys' Fees and the *Briseño* Flags

The third prong that the Court must consider when assessing the adequacy of the relief relates to "the terms of any proposed award of attorneys' fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(c).  In considering the proposed award of attorneys' fees, the Court must be on watch for three "red flags" that tend to show collusion.  *See Westfall*, 2021 WL 4206851, at *4.

The first flag is raised "when counsel receives a disproportionate distribution of the settlement[.]"  *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021).  Here, Class Counsel request $1,308,900—30% of the $4,363,000 Settlement Fund—in attorneys' fees and $45,315.39 in expenses; Class Counsel would thus net slightly more than 31% of the Settlement Fund.[42]

The Court finds that these fees are "on the higher side," but still reasonable.  *See Westfall*, 2021 WL 4206851, at *5 ("While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño.*").  Moreover, because the Court finds that the fees and expenses are not unreasonable on the whole, *see infra* Part III.A., this flag is not triggered.  *Accord Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *6 (C.D. Cal. July 19, 2021) (granting final approval of a settlement when the court found a request for

---

[41]       *Id.* at 6:23-7:8.

[42]       *See* Motion for Attorneys' Fees 2:18-3:8.

attorneys' fees—equivalent to 33% of the settlement—and $20,000 in out-of-pocket expenses to be reasonable).

The second red flag is raised when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27. Although Cuellar's Motion for Attorneys' Fees is unopposed, the settlement agreement has no clause explicitly requiring Defendants to refrain from challenging a fee request. Additionally, the settlement agreement includes language making it binding on the parties, even if the Court declines the requested attorneys' fees. Therefore, the second flag is not triggered.

Lastly, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10. Here, there is no reverter clause; instead, the settlement agreement contains a provision that delivers unclaimed monies to Legal Aid at Work, a 26 U.S.C. § 501(c)(3) non-profit legal services organization that assists low-income working families.[43] Thus, the third flag is similarly not triggered, such that none of the *Briseño* flags is clearly raised.

### iv.   Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Here, the settlement agreement presently before the Court is the only agreement. Thus, the Court need not evaluate any additional agreements outside of the settlement agreement. *Accord Alvarez*, 2021 WL 1234878, at *8. Thus, all four prongs under Rule 23(e)(2)(C) favor granting final approval.

### d.   Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

---

[43]     Motion for Final Approval 7:11-14.

The Court finds the treatment of the class members to be equitable because "[r]ecovery by each individual [c]lass [m]ember is dependent on [the] duration of [their] employment during the [c]lass [p]eriod plus an enhancement to former employees, allocated on a workweek basis and which corresponds to extent of potential harm suffered by each [c]lass [m]ember."[44]  Moreover, the service award for Cuellar—discussed below, *see infra* Part III.C.—does not disturb that finding, in view of the evidence submitted speaking to his level of involvement through four-and-a-half years of discovery and litigation.  Therefore, this factor weighs in favor of granting final approval.

### 3.    The Ninth Circuit "*Churchill* Factors"

Having found that all four factors under Rule 23(e)(2) favor granting final approval, the Court now turns to the eight "*Churchill* factors" that the Ninth Circuit uses to evaluate the fairness of a settlement agreement.

#### a.    Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez*, 266 F.R.D. at 488.  The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class." *Id.*  This factor is generally satisfied when plaintiffs overcame barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Because the parties did not file motions to dismiss or motions for summary judgment, the Court lacks firsthand exposure to the true strengths and weaknesses of the parties' respective positions.  However, Cuellar has described "significant hurdles on the underlying unpaid wage, meal period, and rest break claims," including Defendants' highly compliant written policies and the myriad individualized issues that would make certification difficult.[45]  Indeed, with respect to the individualized issues, the Court notes that the settlement agreement takes the individualized claims into account;[46] those claims would likely be vigorously litigated in the absence of a settlement agreement.  Accordingly, the Court finds that this factor supports final approval.

---

[44]    *Id.* at 5:25-28.

[45]    *See id.* at 11:19-28.

[46]    *See id.* at 5:25-28.

### b.  Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement.  *See Officers for Justice*, 688 F.2d at 625.  Because this factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal," the Court finds that it need not duplicate its analysis. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also id.*, 2018 Advisory Comm. Notes (noting that many of these factors "focus on comparable considerations").  As discussed above, *see supra* Part II.C.2.c.i., this factor weighs in favor of granting final approval.

### c.  Risk of Maintaining Class Action Status through Trial

Although the Court had preliminarily certified the class, the certification was for settlement purposes only.  An "order that grants or denies class certification may be altered or amended before the final judgment."  Fed. R. Civ. P. 23(c)(1)(C).

Cuellar's Motion for Final Approval did not explicitly address this factor, but it did note that, as discussed in his Motion for Preliminary Approval, the "myriad of individualized issues . . . would require that [Cuellar] tread uncharted waters in crafting a certification theory," as "certification would involve assessment of the relationship between individual employees and their managers across multiple locations to see how breaks occurred or how they were provided[, a]nd . . . would involve looking at specific instances [of off-the-clock work] to determine whether the employer was aware that such work was performed or not."[47]  The Court thus finds that the complexity of the class certification process and Defendants' opposition posed a risk to maintaining the class through trial.  Accordingly, this factor weighs in favor of final approval.

### d.  Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount offered.  "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."  *Id.* at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

---

[47]     *Id.* at 11:21-28.

Here, the parties agreed to settle all claims for a total sum of $4,363,000.[48]  This figure equates to a recovery of between $3.59 (minimum) and $1,208.18 (maximum) per class member, as recovery by each class member depends upon the duration of his or her employment during the class period plus an enhancement to former employees; the average recovery will be $244.26 per class member.[49]  Accordingly, the Court continues to find that the settlement amount is appropriate.  *See, e.g.*, *Gallegos v. Atria Mgmt. Co., LLC*, 2019 WL 13295795, at *6 (C.D. Cal. Jan. 28, 2019) (approving a wage-and-hour class settlement with an average individual recovery of $51.22 per class member).  In view of the risks of continued litigation and the substantial recovery for the class, this factor favors final approval of the settlement agreement.  *See Aarons v. BMW of N. Amer., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the [s]ettlement" is a relevant factor).

### e.    Extent of Discovery and Stage of Proceedings

The fifth factor requires the Court to gauge whether Cuellar had sufficient information to make an informed decision about the merits of his case.  *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000).  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases."  *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

In his Motion for Final Approval, Cuellar argues that the parties reached a settlement only after extensive discovery, including "the production of thousands of lines of electronic documents and data including all relevant policies and procedures and detailed class metrics as they relate to the asserted claims" and expert analysis.[50]  That production gives the Court confidence that Cuellar possessed sufficient information to make an informed decision about the settlement.  *See Young*, 2007 WL 951821, at *4.  Additionally, because the parties conducted settlement negotiations with the assistance of a mediator, the Court has further reason to conclude that the parties possessed "a clear view of the strengths and weaknesses of their cases."  *Vasquez*, 266 F.R.D. at 489 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*,

---

[48]    *Id.* at 1:3-14.

[49]    *Id.* at 5:25-6:3.

[50]    *Id.* at 13:27-14:3 & 14:7-8.

798 F.2d 35 (2d Cir. 1986)).  As such, this factor weighs in favor of granting final approval of the settlement agreement.

### f.    Experience and View of Counsel

The sixth factor that the Court considers is the experience of counsel, because "[t]hey are the ones who are most closely acquainted with the facts of the underlying litigation." *Vasquez*, 266 F.R.D. at 489.  "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  However, while counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel have extensive experience handling class action cases.[51]  The Court is satisfied that their experience has allowed them to evaluate the merits of the claims and the risks associated with prosecuting them.  Class Counsel also staunchly support the final outcome as fair and reasonable.[52]  The Court accordingly credits Class Counsel's determination and finds that this factor weighs in favor of final approval.

### g.    Presence of a Governmental Participant

Because no government entity participated in this case, the seventh factor is irrelevant.  *See Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *9 (C.D. Cal. July 7, 2015), *aff'd* (Dec. 9, 2015).

### h.    Reaction of the Class Members to the Proposed Settlement

Finally, in evaluating the fairness, adequacy, and reasonableness of the settlement, the eighth factor that courts consider is the reaction of the class to the settlement.  *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the class members' reaction to the settlement "presents the most compelling argument favoring settlement").  Here, no class member has

---

[51]    *Id.* at 14:18-21.

[52]    *Id.* at 14:23-25.

objected to the settlement agreement, and only eight of the 11,026 class members—constituting 0.07%—opted out.[53]  That fact weighs strongly in favor of final approval.

### 4.    Conclusion on Final Settlement Approval

In conclusion, all factors used to assess the adequacy, fairness, and reasonableness of a class settlement—including both the factors prescribed to the Court under Rule 23(e)(2) and the additional Ninth Circuit "*Churchill* factors"—point in favor of granting final approval.  Therefore, the Court **GRANTS** the Motion for Final Approval of the settlement.

## III.  ATTORNEYS' FEES, COSTS, SERVICE AWARD, AND ADMINISTRATION COSTS

### A.    Attorneys' Fees

Under the settlement agreement, Class Counsel are permitted to seek the Court's approval of attorneys' fees and any documented and reasonable out-of-pocket expenses.  Class Counsel have requested approval of attorneys' fees totaling $1,308,900, which represents 30% of the settlement fund.

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ.  P. 23(h).  "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" when determining the reasonableness of a request for attorneys' fees.  *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 942.  Each method is discussed below.

### 1.    Percentage-of-the-Recovery Method

Applying the percentage-of-recovery method, district courts within the Ninth Circuit typically calculate "25% of the fund" as the "benchmark" for a reasonable fee award.  *Id.*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  A departure from the 25% benchmark requires an "adequate explanation in the record for any 'special circumstances' justifying [the] departure."  *In re Optical Disk Drive Prods. Liab. Antitrust Litig.*, 959 F.3d 922, 942 (9th Cir. 2020).

---

[53]    Second Supplemental Lee Declaration 2:7-16.

Here, Class Counsel request that the Court approve a fee award of $1,308,900, equivalent to 30% of the settlement amount.  The standard 25% award would earn Class Counsel $1,090,975.  Because Class Counsel's request departs from the 25% benchmark, the Ninth Circuit instructs the Court to consider five factors to determine whether the fees reasonably compensate counsel for their efforts in creating the common fund: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).  "The mere fact that the defendant agrees to pay the fees does not detract from the need to carefully scrutinize the fee award."  *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *5 (C.D. Cal. Dec. 21, 2017) (internal quotations omitted).

### a.    Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Omnivision*, 559 F. Supp. 2d at 1046.  Class Counsel argue that the results in this case were exceptional.  They point to the $4,363,900 non-reversionary fund—which equates to an average individual award of $244.46—as justification; they describe this award as "significant."[54]  And Class Counsel point to other "similar wage and hour class action settlements" that received approval for rates above the benchmark with awards ranging from $60 to $179 per individual class member.[55]  However, other similar wage-and-hour class action settlements not cited by Class Counsel achieved much more "significant" awards, and some were nonetheless denied an award over the benchmark.  *See, e.g.*, *Howard Fan v. Delta Air Lines, Inc.*, 2020 WL 5044614, at *3 (C.D. Cal. May 20, 2020) (finding that an expected recovery of $636.52 per class member was not "so exceptional as to support an upward adjustment to the fee award" above the 25% benchmark); *Pagh v. Wyndham Vacation Ownership, Inc.*, 2021 WL 3017517, at *2 (C.D. Cal. Mar. 23, 2021) (finding an average award of $1,029.73 per class member to be "excellent").  And the Court sees no evidence that "counsel pursued this case in the absence of supporting precedents" or "in the face of agreements signed by the class members forsaking benefits"—the presence of which influenced other courts to deem a settlement outcome exceptional.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048.  The wage-and-hour laws are not novel, and class action lawsuits arising under them are not new.  On balance, these findings suggest that Class Counsel achieved a strong result

---

[54]    *See* Motion for Attorneys' Fees 2:18-23.

[55]    *Id.* at 8:5-18.

for the class, but not necessarily an exceptional one. Thus, this factor does not justify departing from the Ninth Circuit's 25% benchmark.

### b.   Risk of Litigation

Class Counsel argue that the award is justified in view of the risk of further litigation. Here, the Court agrees. "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Omnivision*, 559 F. Supp. 2d at 1046-47. The Court looks at how continuing the litigation could jeopardize chances of recovery, as well as the complexity of the legal issues involved. *See Vizcaino*, 290 F.3d at 1048; *Thomas v. Dun & Bradstreet Credibility Corp.*, 2017 WL 11633508, at *19 (C.D. Cal. Mar. 22, 2017). In view of the risk, expense, complexity, and likely duration of continued litigation, *see supra* Parts II.C.2.c.i. & II.C.3.b., the Court finds that this factor weighs in favor of granting the requested fees.

### c.   Skill Required and Quality of Work

The Court next considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See Omnivision*, 559 F. Supp. 2d at 1047. A fee award of one-third of the settlement fund is justified where class counsel "has significant experience in the particular type of litigation at issue." *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *3 (C.D. Cal. Sept. 18, 2020), *appeal dismissed*, 2021 WL 1546069 (9th Cir. Feb. 16, 2021) (awarding 33% of the settlement fund when the law firm "actually pioneer[d] complex ERISA 401(k) excessive fee litigation").

Class Counsel aver that they have "significant wage and hour and class action experience."[56] They list numerous such cases in which they have represented the plaintiff class.[57] And Class Counsel assert that they "[z]ealously and [s]uccessfully [p]rosecuted this [c]ase."[58] However, because the action here never went to trial and motion practice was limited, the Court had little opportunity to gauge Class Counsel's performance first-hand. *Cf. Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (noting that the attorneys' "experience was demonstrated . . . over 3,000 hours litigating the case"); *Omnivision*, 559 F. Supp. 2d at 1047 (observing that plaintiffs' counsel "survived two motions to dismiss"). Furthermore, the Court has little insight into the mediation process and any skill demonstrated therein. Therefore, the

---

[56]   *Id.* at 9:14-15.

[57]   *See* Mooradian Declaration 2:21-4:7; Hacopian Declaration 1:21-2:23.

[58]   Motion for Attorneys' Fees 8:22.

Court finds that this factor is neutral, since the Court lacks sufficient exposure to the attorneys' overall performance needed to affirm higher fees.

### d. Contingent Nature of the Fee

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). As such, departing from the benchmark 25% may be warranted when attorneys work on a contingency basis, especially for protracted periods of time. *See Vizcaino*, 290 F.3d at 1050.

Here, Class Counsel argue that they worked on a contingency fee basis and invested more than $45,000 in upfront costs.[59] While it is not clear precisely when the attorneys began work, it is clear from the docket that they filed this lawsuit in January 2020.[60]

Taking those facts into account, the Court finds that Class Counsel certainly took on risk, but that the risks were not as great as other cases in which a court concluded that an upward departure from the benchmark was warranted. On one hand, because Class Counsel took the case on a contingency basis, they inherently faced the risk of walking away with nothing after investing substantial resources in this matter. That fact favors an upward departure. On the other hand, cases in which that factor justifies an upward departure tend to endure far more protracted lawsuits. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050 (finding a 28% contingency fee was warranted when the lawsuit "extended ***over eleven years***, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work, resulting in a decline in the firm's annual income") (emphasis added); *Omnivision*, 559 F. Supp. 2d at 1047 (the lawsuit spanned three years and the lawyers worked "***7,500 uncompensated hours***") (emphasis added). Here, the case had been ongoing for three-and-a-half years at the time of the hearing.[61] And the three attorneys comprising Class Counsel say that they will have invested just over 590 hours in total, including 20 estimated future hours, which equates to slightly fewer than five 40-hour work weeks per attorney.[62] In view of those facts, this factor weighs against granting an upward departure.

---

[59]   *Id.* at 10:21-27.

[60]   *See* Compl. [ECF No. 1-1].

[61]   *See id.*

[62]   *See* Motion for Attorneys' Fees 13:25-14:13.

### e.     Awards Made in Similar Cases

The requested award in this settlement is on par with awards authorized in similar cases, in which other district courts have approved fee awards in excess of the 25% benchmark in similar wage-and-hour class actions.  *See, e.g.*, *Pagh*, 2021 WL 3017517, at *2 (finding that an award of 30% of the gross settlement amount was reasonable); *Howell v. Advantage RN, LLC*, 2020 WL 5847565, at *4–*5 (S.D. Cal. Oct. 1, 2020) (approving an award of 33.33% of total settlement amount); *Contreras v. Worldwide Flight Servs., Inc.*, 2020 WL 2083017, at *6-*7 (C.D. Cal. Apr. 1, 2020) (same); *Brown v. CVS Pharmacy, Inc.*, 2017 WL 3494297, at *6-*7 (C.D. Cal. Apr. 24, 2017) (awarding 30% of the common fund in attorneys' fees in a wage-and-hour class action settlement); *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *12 (C.D. Cal. Aug. 4, 2015) (approving attorneys' fees of 30% of the settlement fund).  The Court concludes, then, that similar cases establish that some upward departure from the benchmark may be appropriate here.

### 2.     The Lodestar Method and Lodestar Cross-Check

Under the lodestar method, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer."  *Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941.  Although the lodestar figure is "presumptively reasonable," the Court may adjust it upward or downward reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 941-42.

Here, Class Counsel will have worked nearly 700 hours collectively, including 20 estimated future hours—10 each by Zorik Mooradian and Haik Hacopian.[63]  Rates of $650/hour, $450/hour, $300/hour, and $100/hour for Attorney Zorik Mooradian, Attorney Haik Hacopian, Attorney Nanor Kamberian, and Paralegal Kim Fortin, respectively, yield a lodestar figure between $329,759 and $340,759, depending upon whether the calculation includes estimated hours.

---

[63]     *Id.*

| Timekeeper | Hourly Rate | Total hours (excluding estimated hours) | Total hours (including estimated hours) | Total Lodestar |
|---|---|---|---|---|
| Zorik Mooradian | $650 | 326 | 336 | Between $211,900 and $218,400 |
| Haik Hacopian | $450 | 211.42 | 221.42 | Between $95,139 and $99,639 |
| Nanor Kamberian | $300 | 32.6 | 32.6 | $9,780 |
| Kim Fortin (Paralegal) | $100 | 129.4 | 129.4 | $12,940 |
| **Total:** | | **699.42** | **719.42** | **Between $329,759 and $340,759** |

The Court turns to the *2022 Real Rate Report: An Analysis of Law Firm Rates, Trends, and Practices*, WOLTERS KLUWER (2022 ed.) (the "Real Rate Report"), as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Mann v. FCA US LLC*, 2020 WL 7978500, at *3 (C.D. Cal. Nov. 11, 2020). The Real Rate Report offers several relevant data points for fees in the Central District. In Los Angeles, partners who practice labor and employment law at mid-sized firms[64] have an hourly rate ranging from $567 (first quartile) to $870 (third quartile), with a median rate of $677. *See* Real Rate Report 178. Labor and employment associates in Los Angeles have an hourly rate ranging from $335 (first quartile) to $525 (third quartile), with a median rate of $380. *Id.* at 27. Employment litigation paralegals generally have an hourly rate ranging from $180 (first quartile) to $290 (third quartile), with a median rate of $234. *Id.* at 49. Thus, Class Counsel's requested rates for all attorneys and paralegals fall

---

[64]    The Real Rate Report examines rate data at mid-sized firms (quantified as firms with 501 to 1,000 lawyers) and large firms (quantified as firms with more than 1,000 lawyers). Mooradian Law, Class Counsel's firm, is small, with only five attorneys listed on its website. *See About Us*, Mooradian Law, https://www.mooradianlaw.com/about-us/. Thus, the Court would expect Class Counsel's rates to be even lower than the median rates listed in the Real Rate Report, as rates tend to increase with firm size. *See generally* Real Rate Report.

directly in line with their counterparts in the community.[65]  Thus, the Court finds that the requested hourly rates are reasonable.

The Court now turns to the lodestar cross check, which entails an evaluation of the multiplier implied by Class Counsel's requested fees ($1,308,900) and Class Counsel's lodestar fees (computed above as between $329,759 and $340,759).  The lodestar calculation results in a multiplier of between 3.84 and 3.97.[66]  This multiplier is on the high end, but nevertheless in the range, of lodestar multipliers awarded in wage-and-hour class actions.  *See, e.g.*, *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (finding that a 25% award with a 2.88 multiplier was similar to awards "routinely approved" by courts in the Ninth Circuit); *Attia v. Neiman Marcus Group, LLC*, 2019 WL 13089601, at *7 (C.D. Cal. Feb. 25, 2019) (quoting *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010)) ("multipliers may range from 1.2 to 4 or even higher"); *Vizcaino*, 290 F.3d at 1051–54 (affirming a 25% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases" and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 23 class action suits surveyed).

If the Court were to award the standard 25% ($1,090,975) instead, then the resulting multiplier would be between 3.20 and 3.31.  The multiplier for a 25% award is similarly on the high end, but nevertheless in the range, of awards in similar cases.  *See id.*  And if the Court were to apply the median industry rates for each team member, *see* Real Rate Report at 49, 178, rather than their rates as requested, the multiplier on the standard 25% award ($1,090,975) would be between 3.10 and 3.17, and the multiplier on Class Counsel's requested 30% award ($1,308,900) would be between 3.69 and 3.81.[67]  All

---

[65]     Mooradian's rate is slightly below the median rate for partners; Hacopian's rate is above the median rate for associates; Kamberian's rate is slightly below the first quartile rate for associates; and Fortin's rate is slightly below the rate for paralegals.

[66]     Lodestar multipliers are calculated by dividing the requested percentage award by the lodestar rate.

[67]     Applying the median industry rates from the Real Rate Report:

| Timekeeper | Industry Median Hourly Rate | Total hours (excluding estimated hours) | Total hours (including estimated hours) | Total Lodestar |
|---|---|---|---|---|
| Zorik Mooradian | $677 | 326 | 336 | Between $220,702 and $227,472 |
| Haik Hacopian | $380 | 211.42 | 221.42 | Between $80,339.60 and $84,139.60 |

industry-standard rates result in lodestar multipliers that are on the high end, but nevertheless in the range, of awards in similar cases.  *See id.*

### 3. Conclusion on Attorneys' Fees

In this case, Class Counsel obtained strong results for the class; the risk of non-recovery at the outset of litigation was equivalent to the risk in any other wage-and-hour class action cases (because obtaining class certification is sometimes difficult in wage-and-hour cases); and the efforts of Class Counsel throughout this litigation appear to have been satisfactory, although the Court does not have first-hand experience with the excellence that they claim.[68]  In summary, the Court finds that two of the five factors evaluated in the percentage-of-recovery method justify some upward departure, whereas the other three do not.  Asking for 30% of the Settlement Fund with a 3.84 to 3.97 lodestar multiplier, seems quite high if considered in a vacuum.  But in view of the facts that similar wage-and-hour class actions tend to award 30% fees[69] and that Class Counsel's low hourly rates may account for an inflated lodestar multiplier,[70] Class Counsel's requested 30% fee is reasonable.  As such, the Court **GRANTS** the Motion for Attorneys' Fees of 30% of the settlement award.

## B. Costs

In their moving papers, Class Counsel state that they incurred litigation costs totaling $45,315.39.[71]  Those costs represent only 1.04% of the total settlement award.  Class Counsel assert that this total is less than the $50,000 contemplated by the Settlement.[72]  Because the costs are less than estimated, *see Jiangchen v. Rentech, Inc.,*

| | | | | |
|---|---|---|---|---|
| Nanor Kamberian | $380 | 32.6 | 32.6 | $12,388 |
| Kim Fortin (Paralegal) | $234 | 129.4 | 129.4 | $30,279.60 |
| **Total:** | | **699.42** | **719.42** | **Between $343,709.20 and $354,279.20** |

---

[68]    *See supra* Parts III.A.1.a-e.

[69]    *See supra* Part III.A.1.e.

[70]    *See supra* Part III.A.2.; *see also* Motion for Attorneys' Fees 12:1-14:13 (applying the "Laffey Matrix" rates to find a 2.32 lodestar multiplier).

[71]    Motion for Attorneys' Fees 17:20-21.

[72]    *Id.* at 17:21-22.

2019 WL 5173771, at *11 (C.D. Cal. Oct. 10, 2019), and they appear to be reasonable and incurred for the benefit of the class, *see In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989), the Court **APPROVES** the request that costs be reimbursed.

## C.   Service Award

Class Counsel request that this Court grant a service award to Cuellar for serving as the class representative.  Service awards, also known as "[i]ncentive awards," are "fairly typical" in class action cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  They are discretionary in nature and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and . . . to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  "[D]istrict courts . . . evaluate the propriety of requested incentive payments 'using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"  *Roes, 1-2*, 944 F.3d at 1057 (quoting *Staton*, 327 F.3d at 977 (affirming $5,000 service awards but rejecting $20,000 awards as unreasonable)).

"Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."  *Lee v. Glob. Tel*link Corp.*, 2018 WL 4625677, at *12 (C.D. Cal. Sept. 24, 2018) (TCPA case); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for the class representatives' participation throughout the litigation and the risk to their reputation); *see also Roes, 1-2*, 944 F.3d at 1057.  When the incentive award is unusually large, especially "relative to the size of the cash payments that can be claimed by class members," courts consider this discrepancy a "serious red flag[] that the defendants may have tacitly bargained for the named plaintiffs' support for the settlement by offering them significant additional cash awards."  *Id.* (citing *Staton*, 327 F.3d at 975) ("finding that payments to certain identified class members that were 'on average, *sixteen times* greater' than the damages that other unnamed class members would receive, and together made up roughly 6% of the total settlement, 'raise[d] serious concerns as to [the settlement's] fairness, adequacy and reasonableness,' particularly because there was 'no sufficient justification in the record for this differential in the amount of damage awards and the process for awarding them'") (emphasis added).

Class Counsel declare that Cuellar "has spent an extensive amount of time assisting [c]lass [c]ounsel in litigation," including "me[eting] with an hav[ing] . . .

numerous oral and written communications with [them]."[73]  For that effort, Class Counsel ask for a $10,000 award.  That sum is roughly ***40-times*** the average individual award that class members will receive (and more than eight-times the largest individual award); $10,000 represents roughly 0.23% of the overall Settlement Award.

In view of Cuellar's engagement in this litigation over the past four-and-a-half years, the Court finds a service award fair and reasonable.  But given the gaping delta between Class Counsel's proposed service award and the average individual award for class members, the Court finds that a lower service award is more appropriate.  A $5,000 service award is still roughly ***20-times*** the average individual award that class members will receive and roughly four-times the largest individual award.  Accordingly, the Court **APPROVES** $5,000 as a service award for Cuellar and **DIRECTS** that it be paid pursuant to the terms of the settlement agreement.

## D.    Administration Costs

Finally, Class Counsel request $52,575.71 in administration costs for Phoenix Administrators, the Court-appointed settlement administrator.[74]  This request "appears to be reasonable, as those costs relate to designing and executing the administration of the settlement agreement, including mailing notices and processing correspondence from members of the class."  *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5 (C.D. Cal. Oct. 19, 2015).  Thus, the Court **APPROVES** an award of those costs.


## IV.  DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.      Final approval of the class action settlement is **GRANTED**.

2.      An award of attorneys' fees at a rate of 30% of the settlement award ($1,308,900) is **GRANTED**.

3.      An award of litigation costs in the amount of $45,315.39 is **GRANTED**.

4.      A service award for the named Plaintiff, Frank Cuellar, in the amount of $5,000, is **GRANTED**.

---

[73]     Motion for Attorneys' Fees 18:9-11.

[74]     *Id.* at 19:13-14.

5.     An award of administration costs for Phoenix Administrators in the amount of $52,575.71 is **GRANTED**.

6.     Judgment shall issue accordingly.

**IT IS SO ORDERED.**

Dated:_____January 8, 2024_____              _____

John W. Holcomb
UNITED STATES DISTRICT JUDGE